**NOT FOR PUBLICATION**

## In the
## United States Court of Appeals
## For the Eleventh Circuit

————————————

No. 23-10363
Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

FRANKLIN DOMINGUEZ,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20220-KMM-2

————————————

Before JORDAN, ROSENBAUM, and KIDD, Circuit Judges.

PER CURIAM:

Franklin Dominguez appeals his Maritime Drug Law Enforcement Act ("MDLEA") convictions for smuggling cocaine

aboard a go-fast vessel south of the Dominican Republic in the Caribbean Sea.  Dominguez argues on appeal that the district court erred in denying his motion to dismiss the indictment as a sanction for the 24-day delay before his initial appearance.  He also argues that dismissal of the indictment was warranted because his offense did not occur on the "high Seas" as that phrase is used in the Felonies Clause in Article I of the U.S. Constitution, and because the government did not establish statutory jurisdiction under the MDLEA.  After careful review, we affirm.

## I.

According to a factual stipulation for trial, on April 19, 2022, a maritime patrol aircraft located a drifting go-fast vessel in a known drug-trafficking area about 77 nautical miles southeast of Isla Beata, Dominican Republic, in the Caribbean Sea.  Packages drifted around the vessel, which displayed no indicia of nationality and was mostly covered by a tarp.

The Canadian Royal cutter *Harry DeWolf*, with a detachment of U.S. law enforcement on board, was directed to interdict and investigate.  The *Harry DeWolf* launched a smaller boat with a U.S. Coast Guard boarding team, which encountered two occupants, Dominguez and Pedro Rosario Santana.  Neither occupant identified the person in charge or made a claim of nationality, so the vessel was treated as one "without nationality" and therefore subject to the jurisdiction of the United States.  The Coast Guard recovered a total of seven bales, which field tested positive for cocaine and were found to weigh a total of 213.6 kilograms.

After being taken into custody on April 19, 2022, Dominguez and Rosario Santana were transferred from ship to ship, boarding nine in total, before being handed over to the custody of federal agents in Miami on May 12, 2022. The distance to Miami was approximately 1,000 nautical miles. They appeared before a magistrate judge the next day, May 13, 2022. The Coast Guard had been advised that the U.S. Attorney's Office for the Southern District of Florida in Miami would accept prosecution on April 25, 2022.

On May 26, 2022, a federal grand jury returned a two-count indictment charging Dominguez and Rosario Santana with conspiring to possess and possessing with intent to distribute five or more kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States. *See* 46 U.S.C. §§ 70503(a), 70506(a), (b), and 21 U.S.C. § 960(b)(1)(B).

## II.

Dominguez and his codefendant jointly moved to dismiss the indictment on several grounds. First, they argued that their offense fell outside Congress's authority under the Felonies Clause of the U.S. Constitution, because they were apprehended not on the "high seas" but inside a foreign nation's "Exclusive Economic Zone" ("EEZ"). Second, they requested dismissal as a sanction for the government's violation of Fed. R. Crim. P. 5, or pursuant to the "outrageous conduct doctrine," for detaining them for more than three weeks with no judicial oversight. And third, they maintained that the government failed to establish that the vessel was subject

to U.S. jurisdiction under 46 U.S.C. § 70502(d)(1).  The government responded in opposition, and a magistrate judge held an evidentiary hearing, at which the government presented three witnesses to testify about the interdiction and subsequent transit.

Following the hearing, the magistrate judge issued a report and recommendation to deny the motion to dismiss.  The magistrate judge first concluded that the go-fast vessel was on the "high seas" under the Felonies Clause because it was outside the territorial waters of the Dominican Republic.

Next, the magistrate judge found that the delay between detention and presentment was unreasonable under Rule 5.  The judge explained that "only explanation proffered or substantiated was a combination of convenience and custom," specifically "to allow the USCG to continue its law enforcement patrolling in the area."  While that fact negated any accusation that the "delay [was] intentional," according to the magistrate judge, it also undermined the Coast Guard's claim that it prioritized the transfer of detainees, particularly when the evidence showed that Dominguez could have been brought to port earlier in Puerto Rico.  The magistrate judge also found that the conditions of detention were "inadequate" for a long period of detention, even though Dominguez was not "mistreated."

Still, the magistrate judge concluded that the remedy for a violation of Rule 5 was "not dismissal" of the indictment, but rather suppression of the evidence, and that the motion to dismiss should be denied on that basis.  The magistrate judge also reasoned that

the "outrageous government conduct" doctrine did not apply, even assuming it existed, because it must relate to the underlying criminal conduct, and would not authorize dismissal as a sanction for "conduct related to the delayed detention before presentment." The judge further addressed Dominguez's argument, raised at the hearing, that the government violated the Speedy Trial Act, reasoning that the relevant factors did not support dismissal even if the Act was violated.

After both parties filed objections, the district court adopted the magistrate judge's recommendations in substantial part and denied the joint motion to dismiss. The court declined to "reach the thornier question of whether Rule 5(a) was violated here because, even if the Rule were violated, the Court could not afford Defendants the remedy they seek," namely, dismissal. Accordingly, the court adopted the R&R to the extent that it "found dismissal of the indictment to be an improper remedy under Rule 5(a)." The court also found that the Speedy Trial Act was not violated because Dominguez was "arrested" on May 13, 2022, within 30 days of his indictment on May 27, 2022. Finally, the court declined to dismiss the indictment for misconduct under its inherent supervisory powers.

Then, Dominguez waived his right to a jury trial, and the district court found him guilty based on stipulated facts. The district court sentenced Dominguez to 108 months of imprisonment, and he now appeals.

**III.**

6                    Opinion of the Court                    23-10363

Dominguez first argues that the indictment should have been dismissed as a sanction for the government's violation of Rule 5(a), and under the outrageous-government-conduct doctrine, for detaining him for more than three weeks without judicial oversight.  We review a district court's denial of a motion to dismiss an indictment on non-subject-matter jurisdictional grounds for an abuse of discretion.  *United States v. Alfonso*, 104 F.4th 815, 820 (11th Cir. 2024).

A person violating the MDLEA "may be tried in any district," "if the offense was begun or committed upon the high seas." 46 U.S.C. § 70504(b)(2).  Rule 5(a)(1)(B) provides that "[a] person making an arrest outside the United States must take the defendant without unnecessary delay before a magistrate judge . . . unless a statute provides otherwise." Fed. R. Crim. P. 5(a)(1)(B).

The Supreme Court has "indicated that the purpose of Rule 5(a) is to prevent oppressive police interrogations and other 'third-degree' tactics before bringing the accused" to a judicial officer, and that "the remedy was the exclusion of evidence which was gained during the delay by the use of such tactics." *United States v. Cabezas-Montano*, 949 F.3d 567, 591 (11th Cir. 2020); *see also United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973) ("A violation of [Rule 5(a)] renders the evidence obtained *per se* inadmissible.").[1]

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

Whether a delay was "unnecessary" depends on various factors, including:

> (1) the distance between the location of the defendant's arrest in international waters and the U.S. port he was brought to; (2) the time between the defendant's arrival at the U.S. port and his presentment to the magistrate judge; (3) any evidence of mistreatment or improper interrogation during the delay; and (4) any reason for the delay, like exigent circumstances or emergencies.

*Cabezas-Montano*, 949 F.3d at 591; *see also United States v. Purvis*, 768 F.2d 1237, 1238–39 (11th Cir. 1985).

Applying these factors, we held in *United States v. Hurtado*, an MDLEA case, that a delay in presentment of 48 days was not unnecessarily long. 89 F.4th 881, 898–99 (11th Cir. 2023). We noted that, while the delay was long, the time between arrival at port and presentment was short, the defendants were treated humanely during transit, and there was no evidence "that the delay was to gain a tactical advantage." *Id.* at 898; *see Cabezas-Montano*, 949 F.3d at 591–92 (holding, on plain-error review, that a 49-day delay in presentment in an MDLEA case was not plainly unnecessary). We further reasoned that "dismissing th[e] indictment would not comport with the policy behind Rule 5," because the delay in that case "had nothing to do with extracting a confession, and dismissing this indictment would do nothing to deter bad law enforcement tactics." *Hurtado*, 89 F.4th at 899.

Here, Dominguez has not shown that the district court abused its discretion by denying his motion to dismiss the indictment based on a 24-day delay between detainment and presentment.  The overall delay here was half the length of the delay in *Hurtado*, the distance traveled was long, the delay between arrival at port and presentment was short, and there is similarly no evidence of mistreatment during transit or "that the delay was to gain a tactical advantage."  *Id.* at 898.  Indeed, the magistrate judge found that, while the delay was unnecessary, it arose from "legitimate law enforcement goals" and was not "intentional."  And Dominguez does not assert that he was subject to interrogation or other coercive tactics during the delay.  Because the delay here, as in *Hurtado*, "had nothing to do with extracting a confession," dismissing the indictment "would not comport with the policy behind Rule 5."  *Id.* at 899.  The district court properly denied the request for dismissal as a sanction.

Dominguez attempts to bolster his case by reference to Rule 5(b) and the outrageous-government-conduct doctrine, but they don't move the needle.  Rule 5(b) provides that "[i]f a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed."  Fed. R. Crim. P. 5(b).  Indeed, "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention," generally within 48 hours of arrest.  *Cabezas-Montano*, 949 F.3d at 593 (quotation marks omitted).  But we held in *Cabezas-Montano*

that "the Fourth Amendment does not apply to searches and seizures (arrests) by the United States of a non-citizen/non-resident alien arrested in international waters or a foreign country." *Id*. Rather, "the correct analytical framework for [Dominguez's] delay-in-presentment challenge is under Rule 5(a)," which we have already addressed. *Id*.

The outrageous-conduct doctrine provides a potential defense if the government employs "fundamentally unfair" conduct to obtain a conviction. *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). But the government's actions "must relate to the defendant's underlying or charged criminal acts." *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011). In *Jayyousi*, for example, we held that this doctrine would not apply to a claim "relat[ing] to alleged mistreatment [the defendant] received at the brig after the conclusion of his criminal acts and prior to the indictment on the present charges," since there was no "government intrusion into his underlying criminal conduct." *Id*. at 1111–12.

Because the alleged government misconduct here occurred after the conclusion of the criminal acts, the outrageous-government-conduct doctrine would not apply. *See id*. What's more, we held in *Hurtado* that a 48-day delay in presentment in an MDLEA case "was far from outrageous," where the defendants "were treated humanely in detention" and the delay "had nothing to do with extracting a confession." 89 F.4th at 899–900. Given that the delay here was half that time, all else being relatively equal, the

government's conduct was not so outrageous as to violate Dominguez's due-process rights. *See id.*

Finally, Dominguez asserts that the district court has "supervisory powers" to dismiss an indictment separate from the outrageous-conduct doctrine.[2] But the case he cites does not help him. *See United States v. Matta-Ballesteros*, 71 F.3d 754, 763–74 (9th Cir. 1995) (stating that, in the absence of a statutory or constitutional violation or other illegal conduct, "the only way" to exercise supervisory powers to dismiss is "if the defendant could demonstrate governmental misconduct of the most shocking and outrageous kind") (quotation marks omitted). We are not persuaded that it was an abuse of discretion to refuse to exercise such authority in the absence of a statutory or constitutional violation or outrageous government conduct.

For these reasons, neither Rule 5 nor the outrageous-government-conduct doctrine provide grounds to dismiss the prosecution, and the district court properly denied Dominguez's motion to dismiss the indictment with prejudice.

**IV.**

---

[2] Dominguez also briefly references his arguments before the district court regarding the Speedy Trial Act, but he does not challenge the district court's conclusion that the government did not violate that Act, so any argument on that point has been forfeited. *See United States v. Campbell*, 26 F.4th 860, 872 (11th Cir. 2022) (*en banc*) (stating that "issues not raised in the initial brief on appeal are deemed abandoned," absent exceptional circumstances).

Next, Dominguez maintains that the MDLEA is unconstitutional as applied to offenses, like his, committed within the Exclusive Economic Zone or EEZ of another country.  He contends that EEZs are not considered part of the "high seas" under customary international law and therefore fall outside the scope of the power over the "high seas" under the Felonies Clause.

We review de novo both the denial of a motion to dismiss an indictment on subject-matter jurisdictional grounds and the constitutionality of a statute.  *Alfonso*, 104 F.4th at 820.

The Felonies Clause gives Congress the power "to define and punish . . . Felonies on the high Seas," among other offenses.  U.S. Const., Art. I, § 8, cl. 10.  We have repeatedly held the MDLEA is a valid exercise of Congress's power under the Felonies Clause.  *Alfonso*, 104 F.4th at 820.  Nonetheless, we have recognized that Congress "lacks the power to proscribe drug trafficking in the territorial waters" of another country.  *Id.* at 821.

Dominguez's arguments regarding the EEZ are foreclosed by recent binding precedent.  *See United States v. Canario-Vilomar*, 128 F.4th 1374, 1382 (11th Cir. 2025); *Alfonso*, 104 F.4th at 823–24, 827.  The EEZ is a term of "relatively modern vintage" that refers to the area "just beyond a nation's territorial waters but within 200 miles of the coastal baseline."  *Canario-Vilomar*, 128 F.4th at 1382.  In *Alfonso*, we held that "the EEZ is part of the 'high seas' for purposes of the Felonies Clause in Article I of the Constitution," rejecting the same arguments Dominguez makes here.  *See* 104 F.4th at 823–24.  We explained that the Founding era concept of "high seas"

began where "territorial waters" ended, without any other "[s]pe-cial carveout zones." *See id.* at 823–24.  And we rejected the view that customary international law limited the scope of Congress's power under the Felonies Clause.  *Id.* at 825–26.

"Because the 'high seas' includes EEZs, enforcement of the MDLEA in EEZs is proper, and the district court properly denied [Dominguez's] motion to dismiss the indictment."  *Id.* at 827. Moreover, while Dominguez asserts that due process requires a nexus between the United States and his activities, he concedes that his arguments are foreclosed by binding precedent.  *See Canario-Vilomar*, 128 F.4th at 1382–83 (describing a similar nexus argument as "plainly foreclosed" by binding precedent, which holds that "the conduct proscribed by the [MDLEA] need not have a nexus to the United States because universal and protective principles support its extraterritorial reach") (quotation marks omitted).

## V.

Finally, Dominguez argues that the indictment should have been dismissed because the government failed to establish statu-tory jurisdiction under 46 U.S.C. § 70502(d)(1).  We review de novo the district court's interpretation and application of statutory pro-visions regarding its subject-matter jurisdiction.  *Cabezas-Montano*, 949 F.3d at 588 n.13.

The MDLEA prohibits knowing possession of controlled substances with intent to distribute while on board a vessel subject to the jurisdiction of the United States.  *United States v. Nunez*, 1 F.4th 976, 984 (11th Cir. 2021); *see* 46 U.S.C. § 70503(a).  The

MDLEA describes conditions in which a vessel is subject to the jurisdiction of the United States, including vessels "without nationality." 46 U.S.C. § 70502(c)(1)(A). A vessel without nationality can include "a vessel aboard which the master or individual in charge fails . . . to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B). "A claim of nationality or registry may be made, in relevant part, by a verbal claim of nationality or registry by the master or individual in charge of the vessel." *Canario-Vilomar*, 128 F.4th at 1381 (quotation marks omitted).

Here, the government established statutory jurisdiction under the MDLEA. Dominguez and his codefendant both stipulated that the vessel did not bear any indicia of nationality and that, when questioned by the Coast Guard, neither of them identified the master of the vessel or made a claim of nationality for the vessel. This was sufficient to establish jurisdiction under § 70502(d)(1)(B). *See Cabezas-Montano*, 949 F.3d at 589 (holding that jurisdiction was established under § 70502(d)(1)(B) where the defendants did not identify the master of the vessel or make a claim of nationality despite being given two opportunities); *see also Nunez*, 1 F.4th at 986. Further, each defendant expressly stipulated that "there is enough of a factual basis for the Court to find that the vessel in this case satisfies [46 U.S.C. §] 70502(c), which defines a vessel subject to the jurisdiction of the United States." Accordingly, the district court did not err in finding that the government established stateless vessel jurisdiction under the MDLEA.

**VI.**

14                    Opinion of the Court                    23-10363

In sum, we affirm Dominguez's convictions under the MDLEA.

**AFFIRMED.**